# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ELIZABETH CASSIDY,**

**Plaintiff,**

**v.**                                                                  **No. CIV 03-1212 RLP/LFG**

**THE UNIVERSITY OF NEW MEXICO,**
**and VIVIAN LAVALLEY, in both her**
**Official and Individual Capacity,**

**Defendants.**

## MEMORANDUM OPINION AND ORDER

### Introduction

THIS MATTER[1] is before the court on Defendants' Motion to Dismiss or for Summary

Judgment, filed May 14, 2004.  [Doc. No. 16.]  The Motion is fully briefed and includes Plaintiff's

response [Doc. No. 20], amended response [Doc. No. 24] and Defendants' reply.  [Doc. No. 28.]

Defendants' Motion seeks dismissal of the remaining claims in this case, including Count IV (alleged

violation of the equal protection clause of the Fourteenth Amendment); Count V (alleged violation

of 42 U.S.C. § 1983); Count VI (alleged breach of contract); Count VII (alleged breach of the

implied covenant of good faith and fair dealing); and Count VIII (alleged wrongful termination).  The

---

[1]This case was consolidated for pre-trial purposes only with <u>Francomano v. UNM, et al.</u>, No. CIV 03-1211
JP/RHS.  [Doc. No. 12.]  Similar motions to dismiss/motions for summary judgment, based in part on the defense
of qualified immunity, have been raised in both cases.  Discovery has been stayed in both cases pending resolution
of the motions.

parties stipulated to the dismissal of Counts I, II and III, which asserted claims of national origin discrimination, disability discrimination and age discrimination.  [Doc. No. 15.]

Defendants assert that Counts IV, V, VII and VIII should be dismissed for failure to state a claim on grounds of Eleventh Amendment Immunity and/or Qualified Immunity, and that summary judgment should be granted as to Count VI, the breach of contract claim, because there are no genuine issues of material fact for trial.  After carefully considering the pertinent pleadings and applicable law, including the parties' submissions and arguments, the court concludes that Defendants' motion should be granted.  Accordingly, Counts IV, V, VI, VII, and VIII should be dismissed.  The court's reasoning follows.

## Background

The following facts are taken from the parties' statements of undisputed material facts. Plaintiff Elizabeth Cassidy ("Ms. Cassidy") worked with UNM Career Works between April 2000 and June 2002 as a Client Services Manager.  Career Works is a welfare-to-work program providing Temporary Assistance to Needy Families or food stamp clients.  Career Works is funded through an annual contract from the Work Program Bureau of the Income Support Division of the New Mexico Human Services Department.

Employees for Career Works, including Ms. Cassidy, are hired on one-year appointments which are dependent upon funding availability.  The funding cycle for the program is July 1 to June 30 of each year, and the appointments end when funding ends.  The UNM Business Policies and Procedure Manual 3200 states that term employees do not have the right to grieve separation at the end of their term appointment and are not placed on layoff status at the end of the one-year term.

Funding was cut for Career Works by 36.6% for fiscal year 2003.  According to Career Works it was required to restructure to meet programmatic changes with a reduced budget.  As a result, all term appointments of Career Works' employees were allowed to expire on June 30, 2002, and all employees were given the chance to apply for any of the newly created positions.  The staff of Career Works was reduced from 74 to 37 positions.  Before the restructuring, Career Works had a total of 40 client service providers, consisting of 11 client service managers, 8 job placement specialists, 17 instructors, and 4 job developers.  After restructuring, there were 13 client services provider positions consisting of 11 career development specialists and 2 job developers.

The career development specialist was a newly created classification that was a generalist position.  The new position consolidated the functions of the client service managers (a position held by Ms. Cassidy), job placement specialists, and instructors.  The 11 new career development specialist positions were posted and filled through the standard competitive process.  Ms. Cassidy was among 51 total applicants, of which 27 were former Career Works employees.

A search committee, composed of two Hispanic females, including Defendant LaValley and two Hispanic males was responsible for filling the 11 positions.  The committee screened all applications for experience in serving clients and in each of the five specialty areas, including assessment, individual plan coordination, job training, job search and business relations.  Ms. Cassidy and 33 other applicants received an interview.  Five Hispanic females, 1 Hispanic male, 2 Anglo males and 3 Anglo males filled the 11 positions.

The committee met as a group to interview the applicants.  Each committee member scored each candidate.  The scores were tallied and the 11 highest ranking candidates were offered positions.  Ms. Cassidy ranked 22nd after the interviews and was not offered a position.  Defendants assert that

3

she was not selected because she did not show the multi-tasking skills, strategies, or experience of those individuals selected.  Ms. Cassidy disputes that her experience and seniority were considered by the committee and yet provides no probative record evidence to demonstrate that Defendants' asserted reasons for their selections decisions were false or inaccurate.

In addition, Ms. Cassidy argues that the June 2002 restructuring was not done according to proper University procedures, that her seniority was not considered in making the selections, that she was promised orally and in writing that her seniority would be considered, and that the restructuring was a pretext for selecting Defendant LaValley's personal favorite employees.  Ms. Cassidy seeks monetary damages for back pay, benefits and future earnings, and in addition an award of emotional distress damages for pain and suffering and loss of enjoyment of life.  [Complaint for Damages and Jury Demand.]  Nothing in the Complaint requests injunctive or prospective relief.

## Analysis

## Federal Law Claims

### I.  Counts IV and V -- Alleged Violations of the Equal Protection Clause and of 42 U.S.C. § 1983

#### A.  *Count IV and Count V As Asserted Against UNM and Ms. LaValley in Her Official Capacity*

Ms. Cassidy brings Count IV (Equal Protection Clause) against both Defendants – UNM and Ms. LaValley in both her official and individual capacities.  Ms. Cassidy asserts under Count IV that Defendants treated her differently from other similarly situated employees and acted irrationally and

arbitrarily in terminating her employment, in violation of the Equal Protection Clause of the Fourteenth Amendment.[2]

Plaintiff appears to bring Count V (42 U.S.C. § 1983) against only Ms. LaValley in both her official and individual capacities.  Ms. Cassidy alleges that Ms. LaValley deprived her of due process and equal protection and her right to be free from workplace discrimination and harassment. [Complaint, ¶ 37.]  However, Ms. Cassidy's amended response to the motion to dismiss clarifies that the § 1983 cause of action is a claim for deprivation of her alleged constitutionally protected interest in continued employment.

Eleventh Amendment immunity bars the claims against the state entity, UNM, and against Ms. LaValley as sued in her official capacity.[3]  *See* Kentucky v. Graham, 473 U.S. 159, 165-67 (1985). The Eleventh Amendment prohibits suits against states in federal courts for damages allegedly caused by states, state agencies and state officials in their official capacities unless the state unequivocally waives its immunity or Congress expressly abrogates the state's immunity in creating a statutory cause of action.  Archuleta v. Lacuesta, 131 F.3d 1359, 1361 (10th Cir. 1997).  State agencies, which include state universities, are considered an "arm of the state for Eleventh Amendment purposes." Mascheroni v. Board of Regents of the Univ. of Calif., 28 F.3d 1554, 1559 (10th Cir. 1994) (Board of Regents of UNM was arm of the State of New Mexico and Defendant UNM was clothed with

---

[2]Although not determinative of this motion to dismiss, it is noteworthy that Ms. Cassidy does not specifically identify any of the similarly situated employees who were treated differently, and/or how her qualifications for the positions exceeded those qualifications of the employees who were offered the positions. Moreover, even if employees were selected based on alleged "favoritism," Ms. Cassidy does not offer any legal authority supporting the proposition that selecting employees based on favoritism is unlawful.

[3]Plaintiff's response and amended response do not appear to challenge this proposition.  If a defendant is entitled to Eleventh Amendment immunity, the Court lacks subject matter jurisdiction over the claims.  Frazier v. Simmons, 254 F.3d 1247, 1252 (10th Cir. 2001).

Eleventh Amendment immunity), *abrogated on other grounds*, 316 F.3d 1137 (10th Cir. 2003); Hensel v. Office of the Chief Admin. Hearing Officer, 38 F.3d 505, 508 (10th Cir. 1994); Brennan v. University of Kan., 451 F.2d 1287, 1290-91 (10th Cir. 1971) (holding that universities established by the State of Kansas and governed by the Kansas Board of Regents function as alter egos of the state and share Eleventh Amendment immunity with the state).

Here, the court concludes that the state entity did not waive immunity and also that Congress did not specifically abrogate Eleventh Amendment immunity. *See* Ramirez v. Oklahoma Dep't of Mental Health, 41 F.3d 584, 588 (10th Cir. 1994). Defendant UNM did not waive its immunity or consent to suit.

Similarly, state officials sued in their official capacities are entitled to Eleventh Amendment immunity. Entities entitled to Eleventh Amendment immunity are not "persons" under the civil rights statutes and cannot be sued under those provisions. Will v. Michigan Dept. of State Police, 491 U.S. 58, 64 (1989). Another reason state officials sued for damages in their official capacities are entitled to immunity is because they assume the identity of the state agency that employs them. Id. at 71.

Moreover, § 1983 was not intended to abrogate Eleventh Amendment immunity, and the claims against Ms. LaValley in her official capacity also should be dismissed. *See* Quern v. Jordan, 440 U.S. 332, 345 (1979) (holding that Congress did not abrogate states' Eleventh Amendment immunity when it enacted § 1983); Edelman v. Jordan, 415 U.S. 651, 661-62 (1964) (no waiver of immunity created by a § 1983 claim when action is brought against state official rather than the state itself); Will, 491 U.S. at 71 ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."); Eastwood v. Department of Corrs., 846 F.2d 627, 632 (10th Cir.1988)

(stating that "immunity under the Eleventh Amendment remains in effect when state officials are sued for damages in their official capacity").  LaValley did not waive her immunity or consent to suit.

Therefore, the court will grant Defendants' Motion to Dismiss, thereby dismissing both Counts IV and V, with prejudice, as asserted against Defendant UNM and Ms. LaValley as sued in her official capacity.

B.     _Counts IV and V as Asserted Against Ms. LaValley in her Individual Capacity_

As a general rule, Eleventh Amendment immunity is not available to employees sued for damages in their individual capacities.  Cornforth v. Univ. of Oklahoma Bd. of Regents, 263 F.3d 1129, 1132 (10th Cir. 2001), _cert. denied,_ 534 U.S. 1162 (2002); United States v. Regents of the New Mexico State University, ___ F. Supp. 2d ___, 2004 WL 1567861 at *4 (D.N.M. May 4, 2004).  Moreover, even if the state agrees to indemnify the employee for any judgment rendered against them, Eleventh Amendment immunity does not protect them from being sued.  Id.[4]

A state employee may be sued in her individual capacity if she was sufficiently involved personally in a constitutional or statutory violation.  Id. at *6.  In other words, an individual employee may be sued for unconstitutional or wrongful conduct fairly attributable to the supervisor herself.  Id.

---

[4]The Tenth Circuit has recognized that the result of suing an employee in his or her individual capacity may merely be an "end run" around principles of Eleventh Amendment immunity.  Regents of New Mexico State Univ., 2004 WL 1567861 at *7 n. 7.  This is true because most states have, by statute or otherwise, agreed to indemnify an employee held liable for actions taken within the course and scope of his or her duties.  Nonetheless, the Tenth Circuit Court of Appeals has rejected the notion that the employee, even if indemnified by the state, should be entitled to absolute immunity.  However, the court observed that at least two circuit courts have created an exception to the end-run maneuver where individual supervisors of a state employer are sued in their individual capacities under employment related statutes.  Id. at *7, n. 8.  "According to these courts, in employment cases, the state is the real party in interest, as the true employer; individual-capacity lawsuits will not be allowed to force the real party in interest to change its personnel practices or discrete employment decisions."  Id.  The Tenth Circuit has yet to adopt this approach.  _But see_ Molina v. Christensen, 2002 WL 1461976 at *3 (D. Kan. June 26, 2002) (_citing_ Cornforth v. Univ. of Okla. Bd. of Regents for the proposition that if the state is obligated to pay any damage aware entered against the state official, the Eleventh Amendment bars the suit.)

Ms. LaValley, however, may be immune from this lawsuit based on principles of qualified immunity. "Normally, a government employee, even one simply performing his or her duties, is entitled to, at most, qualified immunity from suit." Id. at *5 (*relying on* Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982)). "The purpose of qualified immunity is to evade excessive disruption of governmental functions and to dispose of frivolous claims in the early stages of litigation." Bafford v. Nelson, 241 F. Supp. 2d 1192, 1198 (D. Kan. 2002) (*citing* Saucier v. Katz, 533 U.S. 194, 201 (2001)). Qualified immunity gives officials "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.'" Id. at 1199. Consequently, the question of qualified immunity should be resolved at the earliest stage possible.

The defense of qualified immunity shields state officials from individual liability when they are performing discretionary functions unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. Where a defendant raises a qualified immunity defense through a Rule 12(b)(6) motion, the court must apply a heightened pleading standard which requires the complaint to contain "specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law." Dill v. City of Edmond, 155 F.3d 1193, 1204 (10th Cir. 1998).

Once qualified immunity is raised as a defense, the Tenth Circuit applies the following framework: (1) whether plaintiff alleges sufficient facts that the defendant's actions violated a federal constitutional or statutory right; and (2) whether she demonstrates that the right violated was clearly established at the time of the conduct at issue. Baptiste v. J.C. Penney, 147 F.3d 1252, 1255 (10th Cir. 1998) (internal citations omitted). It is insufficient for the plaintiff to identify merely in the

abstract a clearly established right that she alleges was violated.  Instead, the court determines if a plaintiff has alleged a deprivation of a constitutional right, and only then does the court decide if the right allegedly violated was clearly established.

Do the facts as alleged here show that Ms. LaValley violated a constitutional right?  The court finds that Ms. Cassidy has failed to demonstrate or allege such facts.  Her Complaint first asserts that Ms. LaValley violated her due process and equal protection rights, and yet she makes no specific allegations as to what due process she was entitled to and/or denied or what equal protection rights were denied.  Here, Ms. Cassidy has done nothing more than identify in the abstract several constitutional rights.  She fails to provide the specific, non-conclusory allegations necessary to allow her claim to survive as to the alleged due process and equal protection violations.  Moreover, in her amended response, she does not mention these alleged violations, and the response could be construed then as abandoning those particular claims of alleged constitutional violations.

In addition, even if such claims could initially withstand Rule 12(b)(6) scrutiny, Ms. Cassidy has not alleged the requisite personal participation by Ms. LaValley to hold her liable as a supervisor. Under § 1983, the individual supervisor may be held individually liable only if an "'affirmative link' exists between the constitutional deprivation and either the supervisor's personal participation, [her] exercise of control or direction, or [her] failure to supervise." Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir. 1993) (internal citation omitted).  Here, Ms. Cassidy's allegations of Ms. LaValley's "personal participation" in the selection process are isolated to Ms. LaValley's decision to employ her "personal favorite" employees.  It is undisputed that the selection decisions for appointments were made by a four-person committee, rather than solely by Ms. LaValley.  Moreover, there is no evidence presented that Ms. LaValley had more selection authority in the employment

9

process than other committee members.  Such allegations simply do not demonstrate the required personal participation by Ms. LaValley sufficient to allege a constitutional deprivation, even if Ms. Cassidy had adequately alleged a constitutional violation, which she did not.

Because Ms. Cassidy raises an additional basis for her § 1983 claim in her amended response, the court addresses her assertion that Ms. LaValley violated Ms. Cassidy's constitutionally protected interest in her right to continued employment.  It is undisputed that Ms. Cassidy was employed on a year-to-year term contract that expired at the end of June each year.  The term appointments were dependent upon funding availability.  It also is uncontested that at the end of the term in 2002 (June 30) due to funding reductions, the employment terms of 37 employees expired.  During a restructuring process, the employees were permitted to apply for the fewer positions that were subsequently available and posted.

Under these circumstances, the court concludes that Ms. Cassidy did not have a legitimate expectation of continued employment or a protected property interest in continued employment.  To demonstrate such a property right, the individual must have more than an abstract need or desire for it and more than a unilateral expectation of it.  Garcia v. City of Albuquerque, 232 F.3d 760, 769 (10th Cir. 2000).  It has generally been held that a public employee has a property right protected by the Fourteenth Amendment when that person's employment can be terminated only for specific reasons.  West v. Grand County, 967 F.2d 362, 366 (10th Cir. 1992).

Here, Ms. Cassidy's term contract expired and she was not re-hired.  In Snyder v. City of Moab, the Tenth Circuit (applying Utah law) determined that the employee's expiration of her term of employment extinguished whatever property right she might have had in her employment.  354 F.3d 1179, 1191 (10th Cir. 2003).  *See also* Graff v. Glennen, 106 N.M. 668, 668-69 (1988) (year-

by-year employment relationship did not entitle plaintiff to employment beyond the dates stipulated in the contract); Edinger v. Board of Regents of Morehead State Univ., 906 F.2d 1136 1141 (6th Cir. 1990) (repeated renewal of term contracts do not, in themselves, create a reasonable expectation of continued employment).

The court concludes here that Ms. LaValley is entitled to qualified immunity as both Counts IV and V, as asserted against her in her individual capacity.  Ms. Cassidy has failed to adequately allege any actions by Ms. LaValley that violated a federal constitutional or statutory right.  Thus, the Rule 12(b)(6) motion will be granted as to these claims asserted against Ms. LaValley.[5]

## State Law Claims

**II.** **Count VI – Alleged Breach of Contract**

    A. *Eleventh Amendment Immunity*

Ms. Cassidy state law breach of contract claim also may be dismissed, as a matter of law, because the Eleventh Amendment provides absolute immunity in federal court to states and state officials for suits alleging breach of contract under state law.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984) (stating that there is no "greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law"). "[T]he Eleventh Amendment has been applied to protect a state from suit, without its consent, for breach of contract."  13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3524, at 93-94.  Moreover, to the extent that Plaintiff tried to avoid the Eleventh Amendment bar by suing Ms. LaValley in her individual capacity, under the circumstances of this case, the court concludes that

---

[5]This is not a case where Plaintiff presented a Rule 56(f) affidavit requesting limited discovery in order to respond to the motion to dismiss/motion for summary judgment.

the state agency/university is the real, substantial party in interest on the breach of contract claim alleged.  To the extent that a contract existed, it existed between Ms. Cassidy and the university.  Therefore, Eleventh Amendment immunity bars the state law contract claim, and it will be dismissed without prejudice.[6]

B.    *Alternatively, Summary Judgment is Proper*

Ms. Cassidy initially alleged that Defendants breached her contract by subjecting her to discrimination, harassment and hostility.  However, those claims generally were dismissed by stipulation of the parties.  Ms. Cassidy also claims that her employment contract, whether written, express, or implied, was breached because Defendants promised but did not use seniority as a significant factor in the rehiring process.  In addition, she alleges that Defendants breached her contract by not following its written and stated employment policies and procedures.

To the extent that Ms. Cassidy has a one-year express contract for a term of employment, it does not appear that there is any factual basis to demonstrate that the contract was breached since she was permitted to work through the contract period, at which point the contract simply expired at its termination.  In other words, she was not terminated in the middle of her term contract for cause.

In addition, to the extent that Ms. Cassidy asserts that certain provisions of the university manuals and procedures amounted to express contracts of employment, there certainly is no viable argument or probative facts to demonstrate that her position expired at the end of the year in violation

---

[6]Because the Eleventh Amendment applies only to suits in federal court, this dismissal does not affect Plaintiff's ability to bring the contract claim in state court.

of those procedures.  Instead, those provisions expressly provide for the termination of the one-year contract period at the end of each June.

Ms. Cassidy also argues that UNM breached express terms of its procedures and policies or manuals that provide for seniority to be used in determining which candidates to re-hire.  Yet, as explained below, those provisions either did not apply to Ms. Cassidy as a term employee or merely stated that seniority was one factor that could be used, rather than the sole significant factor to be utilized in making re-hiring decisions.

Moreover, Ms. Cassidy fails to come forward to dispute record evidence presented by Defendants that seniority was considered as part of the hiring process.  Defendants explain in the portion of the matrix used for hiring that the applicant's experience was considered.  Experience of UNM applicants certainly alludes to the seniority of an employee, and thus was part of the hiring criteria.  [Defendants' Reply, p. 6, n. 3; Ex. 3 - Matrices.]

Finally, to the extent that Ms. Cassidy claims that an implied contract arose between her and UNM based on the written representations of policy manuals (discussed both *supra* and *infra*), in oral representations (discussed *infra*), in the customs and practices of the employer, or in a combination of representations and conduct, *see* <u>Garcia v. Middle Rio Grande Conservancy Dist.</u>, 121 N.M. 728, 731 (1996), the court fails to find evidence of such an implied contract.  The existence of an implied contract often involves a determination of whether an employee's expectations are reasonable regarding the terms of her employment, and whether promises or offers made by the employer are sufficiently explicit to give rise to the reasonable expectations of the employee.  <u>Hartbarger v. Frank Paxton Co.</u>, 115 N.M. 665, 669, 772 (1993), *cert. denied*, 510 U.S. 1118 (1994).

The question of whether an employee had a reasonable expectation regarding the terms of her employment and whether the employer breached those terms often present jury questions.  However, courts sometimes do decide these questions as a matter of law at the summary judgment stage, where the plaintiff makes an insufficient showing of an existence of a contract or a breach of the contract.  *See, e.g.,* Stieber v. Journal Publishing Co., 120 N.M. 270 (Ct. App.) (affirming summary judgment for defendant based on findings that statements by the newspaper did not amount to a contract and that newspaper did not commit a breach), *cert. denied*, 120 N.M. 68 (1995).

The court similarly concludes here that summary judgment on the breach of contract claim is proper.  Plaintiff has failed to come forward with probative evidence that a contract existed that was breached by Defendants.  Thus, the claim will be dismissed.

## III.   Count VII -- Alleged Breach of Implied Covenant of Good Faith and Fair Dealing[7]

### A.   *Eleventh Amendment Immunity*

For the same reasons set forth, *supra,* Defendants are entitled to Eleventh Amendment immunity on the state law implied covenant claim.  *See* Pennhurst State Sch. & Hosp., 465 U.S. at 106.  *See also* Thornton v. Kaplan, 937 F. Supp. 1441, 1447 (D. Colo. 1996) (holding that state college and college trustees were entitled to Eleventh Amendment immunity from claims of breach of implied contract, intentional interference with contract and intentional interference of emotional distress where state did not consent to suit in federal court).  Thus, the implied covenant claim will be dismissed without prejudice, on grounds of Eleventh Amendment immunity.

---

[7]The Complaint asserts this claim against a single Defendant without identifying that Defendant as UNM or Ms. LaValley.  The court agrees with Defendants that both Counts VII and VIII, that do not specify the Defendant must be directed only against UNM since it was the actual employer of Ms. Cassidy, and any employment contract would have been entered into between the employee and UNM, as the employer.

14

B.     *Alternatively, Summary Judgment is Proper*

Defendants first assert that NMSA § 37-1-23 provides immunity from actions based on contract, including actions for breach of implied covenant of good faith and fair dealing.  NMSA § 37-1-23(A) provides that "[g]overnment entities are granted immunity from actions based on contract, except actions based on a valid written contract."   While Defendants may ultimately be correct that immunity for such a claim is warranted because this claim is a type of implied contract rather than a written contract.   Nonetheless, Defendants candidly note that the New Mexico Court of Appeals left this immunity question to be answered on another day.  Moriarity Mun. Sch. v. Public Sch. Ins. Auth., 2001-NMCA-96, ¶ 26, 131 N.M. 180, 186 (Ct. App. 2001).  Thus, the Court will not dismiss the claim on grounds of immunity.

Ms. Cassidy proceeds to assert that the personnel manual issued by the state agency is an enforceable implied contract of employment.  [Amended Response, p. 5.]  Again, it appears likely that Defendant would be entitled to immunity under § 37-1-23.   Notwithstanding Ms. Cassidy's articulation of her claim, she also refers to promises made to her in writing, particularly with respect to alleged promises that she would be rehired under University seniority protocols.   [Amended Response, p. 5.]  In her Complaint, she states that Defendant breached the implied covenant of good faith and fair dealing by terminating her employment or employment contract and she cites to a number of written university policies.  Thus, the court will examine her claim, notwithstanding the possibility that UNM is entitled to immunity.  [Complaint, ¶ 47.]

The implied covenant of good faith and fair dealing requires only that neither party injure the rights of the other party to receive the benefit of the agreement.  Dairyland Ins. Co. v. Herman, 1998-NMSC-005, ¶12, 124 N.M. 624 (1997), *reh'g denied* (1998).  In Melnick v. State Farm Mut. Auto.

Ins. Co., the New Mexico Supreme Court refused to recognize a cause of action for breach of an

implied covenant of good faith and fair dealing in an at-will employment relationship, determining that

it was inappropriate to "apply an implied covenant of good faith and fair dealing to override express

provisions addressed by the terms of an integrated, written contract."  Melnick, 106 N.M. 726, 731

(1988).  The general rule is that an implied covenant cannot co-exist with express covenants that

specifically cover the same subject matter.  Continental Potash, Inc. v. Freeport-McMoran, Inc., 115

N.M. 690, 704 (1993), *cert. denied,* 510 U.S. 1116 (1994).

Here, the pertinent written university policies state the following:

> A term appointment employee is hired (full-time or part-time) into a
> position that is designated to run for a defined period of time.  This
> may happen for various reasons, such as, the position is funded from
> non recurring sources (e.g. contracts and grants) or the position is
> needed to complete a special project. . . .
>
> Employees hired for a term appointment will be separated from the
> University as of the specified date unless the supervisor notifies the
> employee that the appointment will be extended.  For the specified
> period of employment, term employees are entitled to all other rights
> and privileges as regular status employees, except the right to grieve
> separation at the end of the appointment.  Term employees are not
> placed on layoff status at the end of the appointment. . . . .

Policy 3200, § 3.3.  [Defendant's Ex. 2, attached to Reply.]

> Certain employees are employed at the University under a term
> appointment agreement.  Post-probationary employees hired on a term
> appointment may be suspended or discharged only for proper cause
> . . . during the term appointment.  However, the individual's
> employment will end as of the specified date, unless the supervisor
> notifies the employee that the appointment will be extended.

Policy 3215, § 2.3.1.  [Defendant's Memorandum of Law, p. 14.]

Ms. Cassidy also asserts that UNM committed a breach by not following seniority provisions.[8] Yet, the written provisions of the manuals and memos, identified by Ms. Cassidy, merely state that seniority is one consideration among others and that seniority of an employee may come into play under only certain circumstances. For example, Ms. Cassidy attaches policy #3705[9] (Plaintiff's Ex. A-2.1), which describes procedures used to determine priorities in promotions and transfers rather than the situation at issue here. Even in that policy, it states that nothing in the policy (e.g., seniority) shall be deemed to override qualifications of employees or other legitimate business reasons for the university's promotion and transfer decisions. In addition, the minutes from a meeting that were attached by Ms. Cassidy as Exhibit A-3.1 state only that seniority would be part of the termination decision. Policy # 3225, also relied upon by Ms. Cassidy, states that lay-offs generally will be based on seniority, but this situation did not involve a lay-off. Instead, the term employment contracts were allowed to expire, and indeed, the pertinent policy provisions state that term appointment employees are not placed on layoff status at the end of the appointment. Policy #3210 (Defendant's Ex. 4), regarding recruitment and hiring, states that when qualifications, abilities and past performance of candidates are substantially equal as determined by the hiring officer, seniority shall be given weight when there are two or more UNM employees. Ms. Cassidy provided no probative evidence that she was substantially equal in qualifications, etc. to the candidates who were selected, and she failed to request through a Rule 56(f) affidavit a need for any limited discovery on this issue.

---

[8]Ms. Cassidy's seniority appears to be a period of about two years.

[9]Policy #3705 also applied to regular full-time employees and regular part-time employees. Term employees are not regular employees per Policy #3200. Thus, this policy actually has no applicability to Plaintiff's employment situation or claims.

Finally, in Ms. Cassidy's affidavit (Plaintiff's Ex. 1), she states summarily that "[m]any former employees, including Plaintiff, were continuously apprised of the fact that seniority will be part of the termination process . . . ."  However, Plaintiff provides no corroborating affidavits from other employees, nor does she describe any specific promises made to her regarding seniority, or by whom or on what date.

It is undisputed that Ms. Cassidy was employed under a year-by-year term contract of employment and that at the end of that term, depending on funding availability, she had no assurance of continued employment.  In this case, when the end of the term arrived, funding had been cut, and all employees and all of their terms of employment expired.  They were not laid off, as per the written policy regarding term employments.  Because the court concludes that UNM was acting in accordance with the express terms of its written policies regarding term employment, there was no violation of any purported implied covenant of good faith and fair dealing that could have given rise to new obligations that were not otherwise contained in the express terms of the pertinent policies. Moreover, it is doubtful that New Mexico recognizes such a claim for breach of implied covenant of good faith and fair dealing when the parties, as they have here, expressed their intent through the unambiguous terms of a year-by-year term employment contract.  Ms. Cassidy simply has failed to come forward with specific facts, supported by admissible evidence, that demonstrate the presence of a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1266 (10th Cir. 1996). For these reasons, summary

18

judgment[10] will be granted to Defendants on the breach of implied covenant claim, and it will be dismissed.

## IV.    Count VIII – Wrongful Termination

### A.    *Eleventh Amendment Immunity*

The fact that the New Mexico Legislature enacted a Tort Claims Act does not mean that the Act waives the State of New Mexico's Eleventh Amendment immunity from suit in federal court. Klein v. Univ. of Kansas Medical Center, 975 F. Supp. 1408, 1416 (D. Kan. 1997) (discussing Kansas Tort Claims Act).  In Ward v. Presbyterian Healthcare Services, 72 F. Supp. 2d 1285, 1291-92 (D.N.M. 1999), the plaintiff argued that the New Mexico Tort Claims Act was evidence that New Mexico had expressly waived its immunity for tort claims.  The court rejected this argument, concluding that waiver of immunity under the Act could only be found under the express exceptions to immunity.  In other words, consent to be sued under the Tort Claims Act could not be implied but had to be located specifically within one of the exceptions.  Id. at 1292.  Indeed, the Tort Claims Act provides an express statement that it does not consent to federal jurisdiction.  "Exclusive original jurisdiction for any claim under the Tort Claims Act shall be in the district courts of New Mexico." Id. (*citing* NMSA § 41-4-18(A).  Thus, Eleventh Amendment immunity precludes the wrongful discharge claim.

### B.    *Alternatively, Express Provisions of the Tort Claims Act Do Not Provide a Waiver of Immunity*

In Count VIII of her Complaint, Ms. Cassidy states that her employment was terminated because of her national origin and/or gender, in violation of her employment contract and the

---

[10]Although Defendants ask for dismissal under Rule 12(b)(6), the court reached it's decision by reviewing materials outside the Complaint and therefore, converts the request as one under Rule 56.

employment policies and procedures of UNM.   [Complaint, ¶ 50.]   These claims generally were

dismissed by stipulation of the parties.   In her amended response to the motion to dismiss, Ms.

Cassidy argues that NMSA § 41-4-21 supports the proposition that a state entity is not immune under

the New Mexico Tort Claims Act from a claim of wrongful discharge.   That statute provides that:

> The provisions of the Tort Claims Act shall not affect the provisions
> of any personnel act, any rules or regulations issued thereunder or any
> other provision of law governing the employer-employee relationship.

The Court disagrees that this provision waives a state entity's immunity for a claim of wrongful

discharge.   The applicable section of the Tort Claims Act states that:

> [a] governmental entity and any public employee while acting within
> the scope of duty are granted immunity from liability for any tort
> except as waived by the New Mexico Religious Freedom Restoration
> Act . . . and by Sections 41-4-5 through 41-4-12 NMSA 1978.
> Waiver of this immunity shall be limited to and governed by the
> provisions of Sections 41-4-13 through 41-4-25 NMSA 1978 . . . .

NMSA § 41-4-4(A).   By the express terms of this statutory provision, UNM would be immune from

a claim of wrongful discharge because none of the enumerated sections (§§ 41-4-5 through 12) limit

its entitlement to immunity.

In Rubio By and through Rubio v. Carlsbad Mun. School Dist., 106 N.M. 446 (Ct. App.

1987), the plaintiff similarly argued that while he did not rely on any of the express waivers of

immunity under §§ 41-4-5 to 12, immunity should be waived under § 41-4-21.   The New Mexico

Court of Appeals rejected this argument.   It reasoned that § 41-4-4(A) clearly provided immunity

from liability except when waived by §§ 41-4-5 to 12.   Id. at 448.   Since the plaintiffs in that case did

not claim a waiver under those sections, then immunity from liability was preserved.   Id.   The court

clarified that § 41-4-21 does not provide a waiver of immunity and therefore, does not provide a basis to sue a defendant.  Id. (internal citation omitted).

For the same reasons, this court rejects Ms. Cassidy's argument that UNM may be sued for wrongful discharge.  Thus, she fails to state a claim under Rule 12(b)(6), and the wrongful discharge claim will be dismissed..

### Conclusion

For all of the reasons stated above, the court concludes that Defendants' Motion to Dismiss/Motion for Summary Judgment should be granted as to Counts IV, V, VI, VII and VIII. Counts IV and V will be dismissed with prejudice, and the state law claims, Counts VI, VII, and VIII, will be dismissed without prejudice.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss or for Summary Judgment [Doc. No. 16] is GRANTED and Claims IV, V, VI, VII and VIII are dismissed, along with Plaintiff's entire Complaint.

Richard L. Puglisi
United States Magistrate Judge